1   WO

2

3

4

5

6             **IN THE UNITED STATES DISTRICT COURT**

7               **FOR THE DISTRICT OF ARIZONA**

8

9   Carrie L Davis,                          No. CV-12-01795-PHX-BSB

10                    Plaintiff,              **ORDER**

11  v.

12  Carolyn W. Colvin, Acting Commissioner
    of Social Security Administration,
13
                     Defendant.
14

15          Carrie Davis (Plaintiff) seeks judicial review of the final decision of the

16  Commissioner of Social Security (the Commissioner), denying her applications for

17  disability insurance benefits and supplemental security income benefits under the Social

18  Security Act.  The parties have consented to proceed before a United States Magistrate

19  Judge pursuant to 28 U.S.C. § 636(b) and have filed briefs in accordance with Local Rule

20  of Civil Procedure 16.1.   For the following reasons, the Court reverses the

21  Commissioner's decision and remands for further proceedings.

22  **I.     Procedural Background**

23          In January 2010, Plaintiff applied for disability insurance benefits and

24  supplemental security income under Titles II and XVI of the Social Security Act (the

25  Act).  (Tr. 20.)[1]  Plaintiff alleged that she was disabled due to psoriatic arthritis,

26  fibromyalgia, degenerative disc disease, and liver, skin, and nerve disorders.  (Tr. 20, 43,

27  _____

28          [1]  Citations to "Tr." are to the certified administrative transcript of record.
    (Doc. 11.)

1    222.)  She initially alleged that her disability began on October 14, 2009, but she later

2    amended her alleged disability onset date to March 10, 2010.  (*Id*.)  After the Social

3    Security Administration (SSA) denied Plaintiff's initial application and her request for

4    reconsideration, she requested a hearing before an administrative law judge (ALJ).  (Tr.

5    2.)  After conducting a hearing, the ALJ issued a decision finding Plaintiff not disabled

6    under the Act.  (Tr. 20-30.)  This decision became the final decision of the Commissioner

7    when the Social Security Administration Appeals Council denied Plaintiff's request for

8    review.  (Tr. 1-5);  *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the

9    Appeals Council).

10   **II.      Medical Record**

11          The record before the Court establishes the following history of diagnosis and

12   treatment related to Plaintiff's physical health.  The record also includes opinions from

13   State Agency Physicians who examined Plaintiff, but did not provide treatment.

14          **A.      Michael J. Fairfax, D. O., Treating Physician**

15          Plaintiff received treatment from rheumatologist Michael J. Fairfax, D.O. at

16   Arthrocare Arthritis Care and Research P.C. (AAC&R), starting in January 2010, for

17   complaints of generalized musculoskeletal pain and polyarthralgias.   (Tr. 532-34.)

18   Plaintiff received treatment approximately every one to two months.  She had symptoms

19   of psoriatic arthritis and fibromyalgia.  (Tr. 533.)  Plaintiff complained of fatigue and

20   non-restorative sleep.  She also reported pain in her knees, elbows, hands, shoulders,

21   neck, low back, hips, and ankles.  (*Id*.)   She reported stiffness in her joints for

22   approximately thirty minutes every morning.  Plaintiff reported night sweats, a history of

23   psoriasis, easy bruising, a history of Raynaud's phenomenon, dry eyes, dry mouth,

24   tinnitus, muscle weakness, a history of depression, intermittent anorexia, and

25   constipation. (*Id*.)  A physical examination revealed scattered psoriasiform lesions, nail

26   pitting, and oncholysis.  (*Id*.)  Plaintiff had abdominal tenderness and Dr. Fairfax noted

27   that she was receiving treatment for a questionable mass.  (*Id*.)  Plaintiff had lumbar

28   paravertebral tenderness and multiple tender points with light palpation over major

1   muscle, bursal, and tendon groups.  (Tr. 533.)  Dr. Fairfax did not note any gross motor
2   or sensory deficits or objective signs of muscle weakness.  (*Id*.)  Dr. Fairfax diagnosed
3   Plaintiff with cutaneous psoriaisis, polyarthralgias with a history of psoriatic arthritis,
4   degenerative disk disease of the cervical spine, ulnar neuropathy, a history of pelvic mass
5   and right upper quadrant mass of questionable significance.  (*Id*.)  He recommended
6   hand, knee, and ankle/foot x-rays.  (*Id*.)

7        Bilateral hand x-rays revealed normal bone anatomy, normal joint spacing, and
8   normal soft tissue based on Plaintiff's age.  (Tr. 537.)  Bilateral foot/ankle x-rays
9   revealed mild symmetrical osteoarthritis.  (Tr. 538.)  Bilateral knee x-rays revealed mild
10  symmetrical loss of joint space height, representing mild osteodegenerative changes.
11  (Tr. 539.)  After reviewing the x-rays, in February 2010, Dr. Fairfax diagnosed cutaneous
12  psoriasis, questionable psoriatic arthritis, and fibromyalgia.  (Tr. 681.)  He recommended
13  medication for arthritis.  (*Id*.)

14       Dr. Fairfax examined Plaintiff again on April 10, 2010.  (Tr. 684-686.)  Plaintiff
15  reported that she could dress herself, lift a cup, and turn regular faucets without any
16  difficulty. (Tr. 684.).  She also reported that she could get in and out of bed, walk on flat
17  ground, wash and dry her entire body, get in and out of a car with "some" difficulty, and
18  bend to the floor to pick up clothing with "much" difficulty.  (*Id.*).  Dr. Fairfax diagnosed
19  fibromyalgia and questionable psoriatic arthritis and recommended that Plaintiff continue
20  her current treatment.  (Tr. 685.)

21       Dr. Fairfax saw Plaintiff on July 27, 2010 for a follow-up appointment.  (Tr.  730-
22  731.)  Plaintiff reported increased pain and swelling in her feet and radiating back pain.
23  (Tr. 730.)  Examination revealed the absence of joint synovitis.  (*Id*.)  Plaintiff reported
24  that she could turn regular faucets without any difficulty, dress herself, lift a cup, wash
25  and dry her entire body with "some" difficulty, walk on flat ground and bend to the floor
26  to pick up clothing with "much" difficulty, get in and out of bed and in and out of a car
27  with "some" to "much" difficulty.  (Tr. 731.)  Dr. Fairfax diagnosed questionable
28  psoriatic arthritis.  (Tr. 730.)

1       Dr. Fairfax examined Plaintiff again on September 2, 2010.  (Tr. 727-729.)

2   Plaintiff presented with "arthralgias of the ankles and knees and worsening low back

3   pain."  (Tr. 727.)  Dr. Fairfax noted that on examination Plaintiff had lumbar spine and

4   paravertebral tenderness, but no joint synovitis.  (*Id.*)  Plaintiff reported that she could lift

5   a cup without any difficulty, get in and out of bed, wash and dry her entire body, turn

6   regular faucets, and get in and out of a car with "some" difficulty. (Tr. 729.)  She also

7   reported that she could walk on flat ground and bend to the floor to pick up clothing with

8   "much" difficulty, and dress herself with varying degrees of difficulty.  (*Id.*)  Dr. Fairfax

9   again diagnosed questionable psoriatic arthritis.  (Tr. 727.)  He ordered lumbar spine x-

10  rays, which revealed mild abnormalities.  (Tr. 737.)

11      Dr. Fairfax examined Plaintiff again on November 24, 2010.  (Tr. 723-724.)

12  Plaintiff reported that medication was somewhat effective in treating her symptoms.

13  (Tr. 723.)   Examination revealed the absence of joint synovitis.   (*Id.*)   Dr. Fairfax

14  diagnosed generalized osteoarthritis and fibromyalgia and concluded there was no

15  evidence of psoriatic arthritis.  He recommended that Plaintiff continue her current

16  treatment.  (Tr. 723.)

17      On December 6, 2010, Dr. Fairfax completed a Medical Assessment of Ability to

18  do Work-Related Physical Activities (Physical Assessment).  (Tr. 739.)  Among other

19  limitations, Dr. Fairfax found that Plaintiff could sit, stand, and walk less than two hours

20  in an eight hour day.  (Tr. 739.)  He further found that she could not crawl or kneel.

21  (Tr. 739-740.)  Dr. Fairfax completed a second Physical Assessment on April 2, 2011.

22  He noted that Plaintiff had shortness of breath, chronic fatigue, and chronic pain.  He

23  noted that medication and rest with reclining or lying down reduced her symptoms, and

24  that stress or physical activity increased them.  (Tr. 742-43.)

25      Dr. Fairfax saw Plaintiff on July 20, 2011.  (Tr. 829.)   He reported that

26  examination revealed tenderness with light palpation over major muscle, bursal, and

27  tendon groups, reduced shoulder ranges of motion, and the absence of joint synovitis.

28

1   (Tr. 829.)  Dr. Fairfax diagnosed psoriatic arthropathy and fibromyalgia, and continued

2   her current treatment.  (Tr. 829.)

3          **B.**       **Elizabeth Ottney, D.O., Examining Physician**

4          Dr. Elizabeth Ottney, a consultative osteopath, examined Plaintiff in March 2010

5   in relation to her disability applications.  (Tr. 572-574, 578-579, 588.)  Plaintiff reported

6   a history of fibromyalgia, arthritis, degenerative spinal disc disease, and ulnar

7   neuropathy.  (Tr. 572.)  Plaintiff reported that she performed household chores, took

8   walks, and was taking college classes.  (*Id*.)  On examination, Dr. Ottney found that

9   Plaintiff had regular cardiac rate and rhythm without abnormal sounds, non-labored

10  breathing, and the absence of peripheral edema, including lower extremity edema.

11  (Tr. 573.)  She also found that Plaintiff had present deep tendon reflexes throughout, the

12  absence of extremity atrophy or deformity throughout, normal extremity muscle strength

13  throughout, including normal grip strength, normal upper extremity fine and gross motor

14  functioning, the absence of lower extremity joint instability, the ability to

15  mount/dismount the examination table without assistance, normal straight leg raise

16  testing, and normal gait and stance.  (*Id.*)  Dr. Ottney noted that Plaintiff could heel and

17  toe walk, tandem walk, squat, and hop.  (*Id.*)  Dr. Ottney concluded that Plaintiff's

18  condition would not impose any limitations that would persist for twelve consecutive

19  months.  (Tr. 575.)

20         **C.**       **Melissa L. Finch, Ph.D, Examining Physician**

21         Dr. Melisa L. Finch, a consulting clinical psychologist, examined Plaintiff on

22  April 24, 2010 in relation to her disability applications.  (Tr. 595-597, 600.)  Plaintiff

23  reported that she had been employed until February 2010, when she was laid off due to

24  downsizing.  (Tr. 596.)  She also reported applying for jobs unsuccessfully due to "hiring

25  freeze[s]."  (*Id*.)  Plaintiff stated that she was attending college to obtain a bachelor's

26  degree in business.  (Tr. 595-596.)  She further reported that she was able to maintain

27  appropriate personal grooming with effort, maintain a budget and pay bills, use

28  transportation, and make everyday decisions without difficulty.  (Tr. 596-597.)  Plaintiff

1  reported occasional difficulty dressing herself due to pain and limited mobility, difficulty
2  preparing meals and doing housework due to "poor motivation," and difficulty shopping,
3  running errands, remembering to take medication, and caring for her pets due to poor
4  memory and concentration.  (Tr. 596.)

5       On examination, Dr. Finch noted that Plaintiff had normal posture and gait,
6  adequate grooming, a logical, coherent, and goal-directed thought process, adequate
7  attention, concentration, and memory for current tasks, intact cognitive functioning with
8  estimated average intellectual functioning, and adequate judgment.   (Tr. 596-597.)
9  Dr. Finch noted that Plaintiff drove an automobile and attended the examination
10 independently. (Tr. 596.)  She concluded that Plaintiff's condition would not impose any
11 limitations that would persist for twelve consecutive months.  (Tr. 598-599.)  She also
12 noted that Plaintiff had no limitations in comprehension and memory, sustained
13 concentration and persistence, social interaction, or adaptation.  (Tr. 598.)

14 **D.     Matthew Benjamin, M.D., Treating Physician**

15      Dr. Matthew Benjamin of Vista Medical Group (Vista) saw Plaintiff on May 26,
16 2010, for complaints of low back pain and lower extremity pain.  (Tr. 646.)  He examined
17 Plaintiff and noted the absence of leg weakness.  (Tr. 646.)  Dr. Benjamin diagnosed
18 psoriatic arthritis currently treated with medication and possible lumbago.  He prescribed
19 additional medication.  (Tr. 646.)  On March 7, 2011, Plaintiff reported to Physician
20 Assistant Paul Bratcher at Vista that she had experienced improvement with her current
21 medication.  (Tr. 819.)

22 **E.     Banner Baywood Medical Center**

23      Plaintiff was treated at Banner Baywood Medical Center (Banner) on May 31,
24 2010.  (Tr. 612-629, 653-660.)  Examination revealed the absence of back tenderness
25 (Tr. 618, 656), normal range of motion in her extremities (Tr. 618, 654, 656), and the
26 absence of focal motor or sensory deficits.  (Tr. 618, 656.)

1

**F.      W. Richard Horn, FNP-C**

2      W. Richard Horn, a certified Nurse Practitioner (NP Horn) at Dr. Fairfax's office,

3 examined Plaintiff on June 9, 2010, at a rheumatological follow-up appointment.

4 (Tr. 687-689.)   On examination, he reported that Plaintiff had tenderness with light

5 palpation over major muscle, bursal, and tendon groups, reduced shoulder ranges of

6 motion, questionable joint synovitis, and normal wrist, elbow, and hip ranges of motion.

7 (Tr. 88.)  Plaintiff reported that she could lift a cup, wash and dry her entire body, and

8 turn regular faucets without any difficulty.  (Tr. 687.)  She also reported that she could

9 dress herself, get in and out of bed, bend to the floor to pick up clothing, get in and out of

10 a car with "some" difficulty, and walk on flat ground with "much" difficulty.  (*Id.*)

11      Shortly after her June 9, 2010 appointment with NP Horn, Plaintiff had bilateral

12 hip and left pelvic x-rays, which revealed minimal abnormalities.  (Tr. 701.)  NP Horn

13 examined Plaintiff again on June 28, 2010.  (Tr. 690-692.)  He noted that Plaintiff had

14 tenderness with light palpation over major muscle, bursal, and tendon groups, reduced

15 hip ranges of motion, and slightly reduced ankle ranges of motion.  (Tr. 691.)  He also

16 noted that Plaintiff had no obvious joint synovitis, normal wrist, elbow, shoulder, and

17 knee ranges of motion, and the absence of pedal edema.  (*Id.*)  Plaintiff reported that she

18 could wash and dry her entire body and turn regular faucets without any difficulty, dress

19 herself, lift a cup, get in and out of a car with "some" difficulty, and get in and out of bed,

20 walk on flat ground, and bend to the floor to pick up clothing with "much" difficulty.

21 (Tr. 690.)

22      NP Horn examined Plaintiff again on September 23, 2010.  (Tr. 725-726.)   He

23 reported that this examination revealed hand, lumbar spine, and paravertebral tenderness,

24 and the absence of joint synovitis.  (Tr. 725.)  NP Horn diagnosed questionable psoriatic

25 arthritis and recommended that Plaintiff continue her current treatment.  (Tr. 725.)  In a

26 Medical Assessment of Ability to do Work-Related Physical Activities, dated July 29,

27 2011, NP Horn indicated that Plaintiff had significant physical functional limitations.

28 (Tr. 810-811.)

1          **G.     Bogdan Anghel, M.D., Treating Physician**

2          Bogdan Anghel, M.D., a specialist in pain management and rehabilitation

3    medicine, saw Plaintiff on April 15, 2011.  (Tr. 771-773.)  Plaintiff reported chronic leg

4    pain that was aggravated by standing and walking.  (Tr. 771.)  She also reported chronic

5    back pain that radiated into her hips and that was aggravated by "standing up straight,

6    walking, lifting, driving, and working overhead."  (Tr. 771.)  She reported that sitting or

7    bending forward eased her back pain "somewhat," but that no position relieved her leg

8    pain. (Tr. 771.)  On examination, Dr. Anghel found that Plaintiff had an antalgic gait and

9    lumbar paraspinal tenderness.  He also noted that she had difficulty walking on her heels

10   and toes, and had weakness with toe raises.  (Tr. 772.)  Dr. Anghel's examination also

11   revealed the absence of lower extremity focal atrophy or muscle deficits, the absence of

12   upper extremity motor deficits, including normal muscle tone, and straight leg raise

13   testing that was positive for back pain but not for radicular pain.  (Tr. 772.)  He diagnosed

14   lumbar degenerative disc disease and mechanical back pain, and prescribed medication

15   and recommended lower extremity electrodiagnostic studies.  (Tr. 772-773.)  On April

16   26, 2011, he examined Plaintiff again and reported that she had a mildly antalgic gait, and

17   difficulty heel and toe walking.  (Tr. 766.)  He prescribed physical therapy for lumbar

18   spine pain, which she received between April 26 and July 6, 2011.  (Tr. 795-809.)

19          Dr. Anghel examined Plaintiff again on June 2, 2011.  (Tr. 764-765.)  Plaintiff

20   reported constant back pain that was exacerbated by standing or walking.  She also

21   reported that she could stand for ten to fifteen minutes before needing to sit down or lean

22   forward. (Tr. 764.)  Dr. Anghel reported that Plaintiff was in "mild distress," had an

23   antalgic gait, had "severe" lumbar paraspinal tenderness, and straight leg raise testing that

24   was positive for back pain but not for radicular pain.  (Tr. 764.)  Dr. Anghel diagnosed

25   lumbar spondylosis with facet syndrome and chronic mechanical back pain.  (*Id*.)  He

26   continued oral medication and recommended a lumbar spine injection. (*Id*.)  Dr. Anghel

27   administered lumbar spine injections to Plaintiff on June 13 and July 18, 2011.  During

28

- 8 -

1    the July 18, 2011 appointment, Plaintiff reported that the previous lumbar spine injection

2    had been somewhat effective at reducing her pain.  (Tr. 761-763.)

3    **III.    Administrative Hearing Testimony**

4          Plaintiff was in her mid-forties at the time of the August 30, 2011 administrative

5    hearing.  (Tr. 75, 194.)  She had the equivalent of a high school education.  (Tr. 223.)

6    Plaintiff's past relevant work included sales clerk, cashier, radio dispatcher, and

7    telephone solicitor.  (Tr. 206, 224, 270, 308.)  Plaintiff testified that she could not work

8    because she had a back disorder that caused her "excruciating" pain.  (Tr. 50-52, 58.)

9    She stated that the pain was aggravated by "anything from doing dishes to daily routine

10    laundry."  (Tr. 51.)  She testified that she also had fibromyalgia that caused back and leg

11    muscle pain and difficulty concentrating.  (Tr. 62.)

12          She further testified that she had lower extremity numbness, swelling, and that she

13    occasionally fell.  (Tr. 58.)  To relieve the swelling, she elevated her legs above her heart

14    for one hour, six times daily.  (Tr. 58-61.)  She also stated that she had bilateral hand

15    numbness causing dropping, difficulty writing, and occasional difficulty buttoning or

16    tying shoes.  (Tr. 58, 61-62.)   Plaintiff stated that she performed limited household

17    chores, and went shopping for brief periods.  (Tr. 66-67.)  She testified that she could sit

18    for thirty to forty minutes, but had to constantly shift position due to back pain and

19    numbness in her legs.  (Tr. 67.)  She also testified that she could stand for two to thirty

20    minutes, that she could walk about a half block on "bad days," and could walk one-and-a-

21    half blocks on "good days" before her legs "stopped working."  (Tr. 67-68.)  She testified

22    that she had difficulty sleeping more than one hour due to pain, and that she could lift no

23    more than six pounds.  (Tr. 68.)  She also stated that she quit attending school in May or

24    June 2010 because "[her] mind wasn't working."  (Tr. 64-65.)

25          Steven B. Gerber, M.D., a medical expert, testified telephonically at the

26    administrative hearing.  He did not ask Plaintiff any questions or listen to Plaintiff's

27    testimony. (Tr. 42, 48 (indicating that the telephone call ended before Plaintiff testified).)

28    He testified that the record was consistent with a residual functional capacity (RFC) that

1    would allow Plaintiff to lift twenty pounds occasionally and ten pounds frequently, stand

2    and walk four hours and sit six hours in an eight-hour workday, perform all postural

3    movements, push/pull bilaterally occasionally, and perform work not requiring the use of

4    ladders or scaffolds.  (Tr. 44-45.)

5         Kathy Atha, a vocational expert, testified that Plaintiff's past work as a sales clerk

6    and as a cashier, as typically performed in the national economy, were light jobs.  (Tr. 69-

7    70.)  She also testified that Plaintiff's past work as a radio dispatcher and a telephone

8    solicitor, as typically performed in the national economy, were sedentary jobs.  (*Id.*) She

9    testified that an individual with the RFC that Dr. Gerber described could perform those

10    jobs.  (Tr. 70.)  Finally, she testified that an individual with the limitations that by

11    Dr. Fairfax and NP Horn assessed could not perform competitive work.  (Tr. 70-72.)

12    **IV.     The ALJ's Decision**

13         A claimant is considered disabled under the Social Security Act if he is unable "to

14    engage in any substantial gainful activity by reason of any medically determinable

15    physical or mental impairment which can be expected to result in death or which has

16    lasted or can be expected to last for a continuous period of not less than 12 months."

17    42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard

18    for supplemental security income disability insurance benefits).  To determine whether a

19    claimant is disabled, the ALJ uses a five-step sequential evaluation process.  *See*

20    20 .F.R. §§ 404.1520, 416.920.

21         In the first two steps, a claimant seeking disability benefits must initially

22    demonstrate (1) that he is not presently engaged in a substantial gainful activity, and

23    (2) that his impairment is severe.  20 C.F.R. § 404.1520(a) (c).  If a claimant meets steps

24    one and two, he may be found disabled in two ways at steps three through five.  At step

25    three, he may prove that his impairment or combination of impairments meets or equals

26    an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20

27    C.F.R. pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is presumptively

28    disabled.  If not, the ALJ proceeds to step four.  At step four, a claimant must prove that

1    his RFC precludes him from performing his past work.  20 C.F.R. §  404.1520(a)(4)(iv).

2    If the claimant establishes this prima facie case, the burden shifts to the government at

3    step five to establish that the claimant can perform other jobs that exist in significant

4    number in the national economy, considering the claimant's RFC, age, work experience,

5    and education.   If the government does not meet this burden, then the claimant is

6    considered disabled within the meaning of the Act.

7            Applying the five-step sequential evaluation process, the ALJ found that Plaintiff

8    had not engaged in substantial gainful activity during the relevant period.  (Tr. 22.)  At

9    step two, the ALJ found that Plaintiff had the following severe impairments:

10   "degenerative disc disease of the lumbar spine, fibromyalgia, obesity, possible early onset

11   of arthritis, and bilateral cubital tunnel syndrome." (Tr. 22.)  At the third step, the ALJ

12   found that the severity of Plaintiff's impairments did not meet or medically equal the

13   criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 25.)

14   The ALJ next concluded that Plaintiff retained the RFC to perform light work reduced by

15   limitations on standing and walking no more than four hours in an eight-hour workday,

16   and sitting for no more than six hours in an eight-hour workday.  (Tr. 25.)  The ALJ

17   further found Plaintiff limited to "lift[ing] and carry[ing] [ten] pounds occasionally and

18   twenty pounds frequently."  (*Id*.)  He also found Plaintiff limited to occasional climbing,

19   balancing, stooping, kneeling, crouching, crawling, pushing, and pulling.  (*Id*.)  The ALJ

20   found that Plaintiff was precluded from climbing ladders or scaffolds.  (*Id*.)  At step four,

21   the ALJ concluded that Plaintiff could perform her past relevant work as a sales clerk,

22   cashier, radio dispatcher, and telephone solicitor because such work does not require the

23   performance of any work-related activities precluded by Plaintiff's RFC.  (Tr. 29.)  The

24   ALJ concluded that Plaintiff was not disabled within the meaning of the Act.  (Tr. 30.)

25   **V.       Standard of Review**

26          The district court has the "power to enter, upon the pleadings and transcript of

27   record, a judgment affirming, modifying, or reversing the decision of the Commissioner,

28   with or without remanding the cause for a rehearing."   42 U.S.C. § 405(g).  The district

1    court reviews the Commissioner's final decision under the substantial evidence standard

2    and must affirm the Commissioner's decision if it is supported by substantial evidence

3    and it is free from legal error.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996);

4    *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even if the

5    ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are

6    harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

7         Substantial evidence means more than a mere scintilla, but less than a

8    preponderance; it is "such relevant evidence as a reasonable mind might accept as

9    adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

10   (citations omitted); *see also Webb v Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  In

11   determining whether substantial evidence supports a decision, the court considers the

12   record as a whole and "may not affirm simply by isolating a specific quantum of

13   supporting evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal

14   quotation and citation omitted).   The ALJ is responsible for resolving conflicts in

15   testimony, determining credibility, and resolving ambiguities.  *See Andrews v. Shalala*,

16   53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to

17   more than one rational interpretation, [the court] must defer to the ALJ's conclusion."

18   *Batson v. Comm'r of* Soc. *Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing

19   *Andrews*, 53 F.3d at 1035.

20   **VI.    Plaintiff's Claims**

21        Plaintiff argues that the ALJ erred in assigning weight to the medical source and

22   lay opinions and in discrediting her subjective complaints.   (Docs. 14, 29.)   The

23   Commissioner argues that the ALJ's decision is free from legal error and supported by

24   substantial evidence in the record.  (Doc. 20.)  For the reasons below, the Court reverses

25   the Commissioner's decision and remands for further proceedings.

26        **A.    Weight Assigned to Nurse Practitioner Horn's Opinion**

27        As set forth above, Plaintiff received treatment from NP Horn at AAC&R.

28   (Tr. 776-778, 829-832, 723-31, 687-92, 837-38.)  In a July 29, 2011 Medical Assessment

1     of Ability to do Work-Related Physical Activities, NP Horn opined that Plaintiff could

2     sit, stand, and walk less than two hours each in an eight-hour workday, lift/carry between

3     ten and fifteen pounds, but that she could not crawl or kneel. (Tr. 810.) Plaintiff argues

4     that the ALJ erred because he did not specifically discuss this opinion or explain his

5     assessment of it. (Doc. 14 at 13.) The Commissioner argues that the ALJ was not

6     required to consider NP Horn's opinion because a nurse practitioner is not an "acceptable

7     medical source," and that any error was harmless because NP Horn's opinion was

8     essentially the same as Dr. Fairfax's opinion, which the ALJ rejected. (Doc. 20 at 19-

9     20.)

10          Nurse practitioners are not considered "acceptable medical sources" under the

11     Social Security regulations. 20 C.F.R. § 404.1513(d)(1), 416.913(d)(1). Rather, these

12     medical professionals are considered "other medical sources." *Id.* However, in

13     determining whether a claimant is disabled, an ALJ must consider lay witness testimony,

14     including "other medical source" opinions, concerning a claimant's ability to work.[2] *See*

15     *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted) (stating that

16     "[l]ay testimony as to a claimant's symptoms or how an impairment affects ability to

17     work is competent evidence . . . and therefore cannot be disregarded without comment");

18     *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (ALJ must give reasons that are

19     germane to each witness for rejecting lay witness testimony); 20 C.F.R.

20     §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e); SSR 06–03p, 2006 WL 2329939, at * 2

21     (Aug. 9, 2006) (opinions from other medical sources who are not acceptable medical

---

22          [2] The distinction between "other sources" and "acceptable medical sources" is

23     significant because only an "acceptable medical source" may be considered a "treating

24     source." 20 C.F.R. §§ 404.1502, 416.902, 4040.1513(a). However, when there is an

     agency relationship between an "acceptable medical source" and an "other source,"

25     evidence from that "other source" may be ascribed to the supervising "acceptable medical

26     source." *Buck v. Astrue*, 2010 WL 2650038, * 5 (D. Ariz. July 1, 2010) (discussing

     *Gomez v. Chater*, 74 F.3d 967, 970–71 (9th Cir. 1996) (affording great weight to a nurse

27     practitioner's opinion because she worked closely on an interdisciplinary team with a

     doctor)).

28

1    sources "may provide insight into the severity of the impairment(s) and how it affects the

2    individual's ability to function.").  The ALJ may discount testimony from these "other

3    sources" if the ALJ "'gives reasons germane to each witness for doing so.'"  *See Turner*

4    *v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236

5    F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent

6    evidence that an ALJ must take into account, unless he or she expressly determines to

7    disregard such testimony and gives reasons germane to each witness for doing so.")).

8        Thus, the ALJ was required to consider and comment upon NP Horn's opinion as

9    it concerned how Plaintiff's impairments impacted her ability to work.  The ALJ

10   mentioned that on March 23, 2011, NP Horn "provided the same assessments of claimant

11   [as Dr. Fairfax had given]."  (Tr. 27 (citing hearing exhibit 33F3).)  The March 23, 2011

12   document to which the ALJ referred is a treatment note signed by Dr. Fairfax and

13   NP Horn stating that Plaintiff complained of extreme pain in her lumbar spine region,

14   noting Plaintiff's continuing diagnoses, including fibromyalgia, and stating that Plaintiff

15   should continue her treatment program.  (Tr. 831.)  The treatment note also referred

16   Plaintiff to a spine specialist.  (*Id.*)  The ALJ did not mention NP Horn's July 2011

17   assessment of Plaintiff's work-related physical activities, identify the weight he afforded

18   that opinion, or give any reason for his apparent rejection of that opinion.  The ALJ's

19   failure to do so was error.  *See Lewis*, 236 F.3d at 511.

20       The Commissioner argues that any error was harmless because NP Horn's opinion

21   regarding Plaintiff's functional limitations was the same as Dr. Fairfax's opinion that the

22   ALJ rejected.  The Court rejects this argument for two reasons.  First, the ALJ did not

23   state that he was rejecting NP Horn's opinion on the same basis as he rejected Dr.

24   Fairfax's opinion.  The ALJ is required to provide specific reasons for rejecting lay

25   testimony and the district court cannot provide reasons for the ALJ's decision.  *See*

26   *Dodrill*, 12 F.3d at 919.  Indeed, the court "cannot affirm the decision of an agency on a

27   ground that the agency did not invoke in making its decision."  *Pinto v. Massanari*, 249

28   F.3d 840, 847 (9th Cir. 2001) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

- 14 -

1    Second, the ALJ's failure to discuss the other source medical opinion was not

2    harmless.  The Ninth Circuit has consistently reversed the Commissioner's decisions for

3    failure to comment on such competent testimony.  *See, e.g., Merrill ex rel. Merrill v.*

4    *Apfel*, 224 F.3d 1083, 1085-86 (9th Cir. 2000) (remanding to ALJ to consider lay

5    testimony); *Nguyen*, 100 F.3d at 1467 (finding that ALJ's disability determination was

6    not supported substantial evidence when ALJ did not provide any reasons for discounting

7    lay witness testimony and remanding for further proceedings); *Dodrill*, 12 F.3d at 919

8    (remanding for ALJ to articulate specific reasons for rejecting lay witness testimony).

9    Following these decisions, the Ninth Circuit held that when "the ALJ's error lies in a

10   failure to properly discuss competent lay testimony favorable to the claimant, a reviewing

11   court cannot consider the error harmless unless it can confidently conclude that no

12   reasonable ALJ, when fully crediting the testimony, could have reached a different

13   disability determination."  *Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d at 1050, 1056 (9th

14   Cir. 2006) (finding that ALJ's error in failing to provide reasons for rejecting lay

15   testimony was not harmless when that testimony supported a finding of disability).

16   In this case, the Court cannot reach such a conclusion.  If fully credited,

17   NP Horn's opinion supports a conclusion that, due to her physical impairments, Plaintiff

18   was unable to sit, stand, or walk for more than two hours in an eight-hour workday.

19   When NP Horn's opinion is considered with the vocational expert's testimony, a

20   reasonable ALJ could find that Plaintiff cannot return to gainful employment.[3]

21   Consequently, the ALJ's error in failing to address this opinion and provide germane

22   reasons for rejecting it was not harmless.

23   **B.    Conclusion**

24   Because the ALJ erred in failing to discuss and provide germane reasons for

25   rejecting NP Horn's opinion, and because that error was not harmless, the Court

26

27       [3] The vocational expert testified that an individual the same age as Plaintiff, and
28   with the same educational  profile, and who could sit/stand and walk less than two hours
     in an eight-hour workday, and lift/carry between ten and fifteen pounds, would be
     precluded from competitive employment.  (Tr. 70-71.)

1    concludes that substantial evidence does not support the Commissioner's decision that

2    Plaintiff can perform her previous work.    Consequently, the Commissioner's

3    determination is reversed, and this matter is remanded to the Commissioner for further

4    administrative proceedings consistent with this opinion.[4]

5         Accordingly,

6         **IT IS ORDERED** that the decision of the Commissioner is **REVERSED** and this

7    matter is remanded to the Commissioner for further proceedings consistent with this

8    Order.  The Clerk of Court is directed to enter judgment accordingly and to terminate this

9    case.

10        Dated this 24th day of January, 2014.

11

12

13    _____
                      Bridget S. Bade
14                    United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25    _____

26        [4]   Because remand is appropriate based on the ALJ's error in failing to properly
      consider the other source medical opinion, the Court does not reach Plaintiff's other
27    claims of error.  On remand, the ALJ may reconsider his assessment of the record as a
      whole and is not limited to his consideration of NP Horn's opinion.  Indeed, the ALJ
28    should consider revisiting his assessment of Dr. Fairfax's opinion, which is consistent
      with the NP Horn's opinion.